## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

DARRYL FITZGERALD JOHNSON,

        Plaintiff,

v.

BACKGROUND INVESTIGATION
BUREAU, LLC,

        Defendant.

**Case No.:**      3:23-4767-TLW

**JURY TRIAL DEMANDED**

## COMPLAINT

Darryl Fitzgerald Johnson ("Plaintiff" or "Mr. Johnson") by and through his counsel brings the following Complaint against Background Investigation Bureau, LLC ("Defendant" or "BIB") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted criminal.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database

and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of two disorderly conduct offenses and a theft offense. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been arrested, charged with, or convicted of a crime in his life.

5.     Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate convictions, which do not belong to Plaintiff.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Cuyahoga County, Ohio regarding the criminal records prior to publishing Plaintiff's report to his prospective employer.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their social security number and even reside in a different part of the country from Plaintiff.

8.     Even after Plaintiff disputed the inaccurate records with Defendant, Defendant failed to conduct a reasonable investigation and correct its reporting.

9.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11.     Defendant's inaccurate report cost Plaintiff a good paying job and job security, as he was denied employment solely due to the inaccurate records reported by Defendant.

12.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the**

3

**criminal records that do not belong to him** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

14.     Darryl Johnson ("Plaintiff" or "Mr. Johnson") is a natural person residing in Blythewood, South Carolina and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Background Investigation Bureau, LLC ("Defendant" or "Background") is a North Carolina limited liability company doing business throughout the United States, including the State of South Carolina and in this District, and has a principal place of business located at 9713 Northcross Center Ct Ste 201 Huntersville, NC 28078-7343.

16.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

22.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

27.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

31.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

32.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34.    Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019),
https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf
("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at
http://www.ibisworld.com/industry/background-check-services.html.

The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting criminal records that belong to an unrelated consumer who has a different Social Security Number and address than Plaintiff.

40.    As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening

Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Fort Mill School District

41.    Plaintiff was working as a driver part-time. The job was seasonal in nature and could leave Plaintiff without income for periods of time.

42.    Accordingly, in or about July 2023 Plaintiff began a job search for a full-time position.

43.    In or around late July 2023, Plaintiff applied for full-time employment as a bus driver with Fort Mill School District ("Fort Mill").

44.    On or about August 1, 2023, after applying with Fort Mill, Plaintiff successfully completed an interview.

45.    Upon information and belief, Fort Mill extended a verbal job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to Fort Mill

46.    Fort Mill contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

47.    On or about August 9, 2023, Fort Mill ordered a criminal background check on Plaintiff from Defendant.

48.    On or about August 11, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Fort Mill.

49.    Within that employment report, Defendant published inaccurate information about Plaintiff.

50.    Specifically, Defendant's employment report about Plaintiff included three grossly inaccurate and stigmatizing criminal convictions from Cuyahoga County, Ohio, which appeared in the employment report as follows:



CRIMINAL/OTHER PUBLIC RECORDS
OH - CUYAHOGA
COMPLETE

***** POSSIBLE RECORD - VERIFY WITH YOUR SUBJECT *****
AOC - OHIO-BEDFORD
JOHNSON,DARRYL,F
DOB=12/02/1963
S=U R=U
ADDR: 6026 MARRA DR BEDFORD HTYS OH 44146
COURT: CUYAHOGA COUNTY BEDFORD(MUNICIPAL)
DOCKET NUM: 10CRB01325
FILED: 08/24/2010
    CHRG: DISORDERLY CONDUCT
        OFFENSE DATE: 08/23/2010
        CODE/STATUTE: 648.04
        PLEA: NO CONTEST
    DISP CHRG: DISORDERLY CONDUCT
        CODE/STATUTE: 648.04
        DISPOSITION: 11/03/2010 - GUILTY

—+— —+— —+—

***** POSSIBLE RECORD - VERIFY WITH YOUR SUBJECT *****
AOC - OHIO-BEDFORD
JOHNSON,DARRYL,F
DOB=12/02/1963
S=U R=U
ADDR: 6026 MARRA DR BEDFORD HTYS OH 44146
COURT: CUYAHOGA COUNTY BEDFORD(MUNICIPAL)
DOCKET NUM: 14CRB00527
FILED: 03/18/2014
    CHRG: DISORDERLY CONDUCT
        OFFENSE DATE: 03/14/2014
        CODE/STATUTE: 509.03

https://aegis.bib.com/index.cfm/orderList/pef?comp_code=FOR005&check=4894394                    2/3

/11/23, 2:26 PM                                    Report Viewer

        PLEA: NO CONTEST
    DISP CHRG: DISORDERLY CONDUCT
        CODE/STATUTE: 509.03
        DISPOSITION: 04/01/2014 - GUILTY

—+— —+— —+—

```
AOC - OHIO-CUYAHOGA COMMON PLEAS
JOHNSON,DARRYL,F
DOB=12/02/1963
S=M R=B
ADDR: 4594 EAST 147TH STREET CLEVELAND OH US
COURT: CUYAHOGA COUNTY(COMMON PLEAS)
DOCKET NUM: CR-87-216993-ZA
FILED: 05/29/1987
   CHRG: THEFT
     CODE/STATUTE: 2913.02
   DISP CHRG: THEFT
     CODE/STATUTE: 2913.02
     DISPOSITION: PLED GUILTY
```

51.     The criminal convictions reported by Defendant about Plaintiff to Fort Mill *do not* belong to Plaintiff.

52.     Plaintiff has never been charged with or convicted of a crime in his life.

53.     A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male, Darryl F. Johnson ("Convicted Johnson").

54.     Had Defendant actually consulted or obtained the widely available underlying public court records regarding the two convictions, it would have seen obvious discrepancies between Convicted Johnson and Plaintiff.

55.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Johnson include the following:

   (a)     Plaintiff has never resided in Ohio, which is confirmed and clearly indicated on the face of the subject employment report, yet the underlying public court records regarding the three criminal

11

convictions indicate that Convicted Johnson resided in Ohio, at the time he committed the offenses; and,

(b)     Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Johnson.

(c)     Plaintiff's exact date of birth, which was provided to Defendant prior to publishing the subject employment report, is not the same as Convicted Johnson's;

(d)     Plaintiff's full middle name (Fitzgerald), which was provided to Defendant prior to publishing the subject employment report, is not the same as Convicted Johnson's.

56.     Further, "Johnson" is the second most common surname in the United States. Defendant is aware of this yet has not implemented reasonable procedures to prevent the mixing of information between two consumers with the same common last name.

57.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

58.     Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual

with a different middle name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

59.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Fort Mill Denies Plaintiff's Job Application**

60.    On or about August 17, 2023, Plaintiff was notified via email by Fort Mill that his employment application was denied as a direct result of the criminal convictions reported by Defendant.

61.    Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Johnson, were published in the employment report Defendant sold about Plaintiff to Fort Mill.

62.    Plaintiff was very panicked, confused, and concerned about the impact of Convicted Johnson's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on his future.

63.    Specifically, Defendant matched Plaintiff and Convicted Johnson and published the criminal records of Convicted Felon Johnson onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer.  This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's

13

employment report to Fort Mill, but Defendant failed to perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Defendant's Employment Report

64.     On or about August 18, 2023, desperate to secure employment with Fort Mill and riddled with worry over the far-reaching impacts of being confused with a convicted criminal, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff disputed with Defendant via email using Defendant's dispute form.

65.     Plaintiff identified himself and provided information to Defendant to support his dispute.

66.     Plaintiff specifically disputed the criminal records of Convicted Johnson.

67.     Plaintiff specifically stated that the criminal records of Convicted Johnson do not belong to Plaintiff and that he has "never been arrested or ever lived . . . in Ohio."

68.     Plaintiff specifically asked Defendant to investigate and correct the "incorrect information about [his] past" which was reported on his employment report by Defendant.

### Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report

69.     On or about August 21, 2023, Plaintiff received Defendant's email correspondence confirming that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate and that it would not correct the subject employment report otherwise.

70.    Defendant's email stated "Unfortunately, Cuyahoga and Bedford County are currently reflecting your information."

71.    Defendant then shifted the investigation burden to Plaintiff by asking Plaintiff to "contact the clerk of courts for those counties and provide any information or paperwork you may have to prove this charge does not belong to you."

72.    Upon information and belief, Defendant failed to contact the clerks of those courts and simply performed a cursory data conformity review by merely looking at its own records, which courts have repeatedly ruled is unreasonable.

73.    Defendant failed to issue a corrected employment report to Fort Mill.

74.    Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's August 18, 2023 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

75.    Because Defendant failed to issue a corrected employment report, Fort Mill did not reinstate its job offer to Plaintiff.

76.    But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

77.    Defendant's false report cost Plaintiff a promising, well-paying job with Fort Mill. Plaintiff was offered $32.00 per hour plus benefits for as many hours as he wants to work since the high schools have many after hours trips for which he could drive a bus.

78.     Plaintiff was forced to take a temporary part-time job driving a shuttle for college students between their housing and the university just to pay the bills. In that job, he makes only $18.00 per hour, is limited to 30 hours per week, and has no benefits.

79.     Plaintiff was very excited to work as a bus driver because he was qualified to successfully perform the work, was passionate about the field, and wanted the strong and steady income.

80.     Plaintiff has been afraid that the incorrect information remains on his background report and is afraid of being inaccurately and disparagingly labeled a criminal. Plaintiff fears applying to another school district for a bus driver job because he is certain that other potential employers will get the same inaccurate background check.

81.     Plaintiff also began the job application process with Richland County One to become a bus driver, but then he had to tell them not to run his background check because of the errors that were published by Defendant.

82.     Plaintiff has been distraught by being falsely called a criminal and is in limbo waiting for Defendant to correct its report that it sold to Fort Hill.

83.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff has been denied better income and steady employment.

84.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.  Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

85.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

87.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

88.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

89.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the

employment report it sold about Plaintiff as well as the information it published within the same.

91.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

94.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

95.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

96.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

97.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he was convicted of several criminal offenses.

98.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

99.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in

Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

100.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

101.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd day of September 2023.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
CONSUMER ATTORNEYS
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com

*Attorneys for Plaintiff*
*Darryl Fitzgerald Johnson*